ACCEPTED
15-25-00122-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
10/23/2025 7:28 PM
CHRISTOPHER A. PRINE
CLERK

Cause No. 15-25-00122-CV

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
10/23/2025 7:28:17 PM
CHRISTOPHER A. PRINE
Clerk

# IN THE COURT OF APPEALS
## FOR THE FIFTEENTH JUDICIAL DISTRICT
## AUSTIN, TEXAS

STATE OF TEXAS, MAXX JUUSOLA, TRACY MARTIN, AND ALAN CRIDER
*Appellants,*

v.

CITY OF DALLAS, KIMBERLY BIZOR TOLBERT, IN HER OFFICIAL CAPACITY AS THE INTERIM CITY MANAGER FOR THE CITY OF DALLAS, AND THE STATE FAIR OF TEXAS,
*Appellees.*

## BRIEF OF THE STATE OF TEXAS

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil Litigation

ERNEST C. GARCIA
Chief, Administrative Law Division

ERNEST C. GARCIA
State Bar No. 07632400
CANON PARKER HILL
State Bar No. 24140247
ALEXANDER COMSUDI
State Bar No. 24087006
Assistant Attorneys General
Administrative Law Division
Office of the Attorney General
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 936-1838
ernest.garcia@oag.texas.gov
canon.hill@oag.texas.gov
alexander.comsudi@oag.texas.gov
ATTORNEYS FOR STATE OF TEXAS

# IDENTITY OF PARTIES AND COUNSEL

The following is a list of all the parties, names, and addresses of counsel:

Appellant:                    State of Texas

State's Counsel:              Ernest C. Garcia
                              State Bar Number: 07632400
                              Assistant Attorney General
                              Canon Parker Hill
                              State Bar Number: 24140247
                              Assistant Attorney General
                              Melissa Juarez
                              State Bar No. 00784361
                              Assistant Attorney General
                              Steven Ogle
                              Assistant Attorney General
                              Texas State Bar No. 24044477
                              Patrick Todd
                              State Bar Number: 24106513
                              Assistant Attorney General
                              Alexander Comsudi
                              State Bar No. 24087006
                              Assistant Attorney General
                              Keegan J. Howe
                              State Bar No. 24143028
                              Assistant Attorney General
                              Administrative Law Division
                              P.O. Box 12548, Capitol Station
                              Austin, Texas 78711
                              Telephone:(512) 936-1838

Individual Appellants:        Maxx Juusola, Tracy Martin, and Alan
                              Crider

Individual

Appellants' Counsel:        Tony K. McDonald
State Bar Number: 24083477
Connor Ellington
State Bar Number: 24128592
The Law Offices of Tony McDonald
1308 Ranchers Legacy Trail
Fort Worth, Texas 76126
tony@tonymcdonald.com
connor@tonymcdonald.com

Appellees:        City of Dallas and Kimberly Tolbert in her official capacity as Interim City Manager for the City of Dallas

Appellees' Counsel:        Jeffrey Tillotson
State Bar Number: 20039200
Tillotson, Johnson & Pattin
1201 Nain Street, Suite 1300
Dallas, Texas 75202
jtillotson@tillotsonlaw.com

Appellee:        State Fair of Texas

Appellee's Counsel:        James B. Harris
State Bar Number: 09065400
Holland & Knight LLP
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Jim.harris@hklaw.com

# GLOSSARY

State Fair of Texas (SFOT)

Fair Park Contract (a lease agreement)

The City of Dallas (City)

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL.................................................................ii

GLOSSARY ...........................................................................................................iv

TABLE OF CONTENTS..........................................................................................v

INDEX OF AUTHORITIES ...................................................................................vi

STATEMENT OF THE CASE.................................................................................xi

REFERENCES TO THE PARTIES ........................................................................xii

REFERENCES TO THE RECORD.........................................................................xii

STATEMENT REGARDING ORAL ARGUMENT .............................................xiii

ISSUE PRESENTED............................................................................................xiv

STATEMENT OF FACTS ....................................................................................... 1

STANDARD OF REVIEW ...................................................................................... 5

SUMMARY OF THE ARGUMENT ........................................................................ 6

ARGUMENT ........................................................................................................... 7

CONCLUSION....................................................................................................... 47

PRAYER ................................................................................................................ 48

CERTIFICATE OF COMPLIANCE...................................................................... 50

CERTIFICATE OF SERVICE............................................................................... 51

APPENDIX............................................................................................................. 52

# INDEX OF AUTHORITIES

Cases

*Abutahoun v. Dow Chem. Co.,*
   463 S.W.3d 42, 46 (Tex. 2015) ............................................................... 23

*Argonaut Ins. Co. v. Baker,*
   87 S.W.3d 526, 529 (Tex. 2002) ........................................................... 5, 7

*Bexar Appraisal Dist. v. Johnson,*
   691 S.W.3d 844, 847 (Tex. 2024) ....................................................... 23, 46

*BPX Operating Co. v. Strickhausen,*
   629 S.W.3d 189, 196 (Tex. 2021) ........................................................... 27

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n,*
   531 U.S. 288, 295–96 (2001) ................................................................. 30

*Cameron v. Terrell & Garrett, Inc.,*
   618 S.W.2d 535, 540 (Tex. 1981) ........................................................... 20

*Childs v. Haussecker,*
   974 S.W.2d 31, 44 (Tex. 1998) .............................................................. 22

*Cire v. Cummings,*
   134 S.W.3d 835, 838–39 (Tex. 2004) ..................................................... 43

*City of Richardson v. Oncor Elec. Delivery Co.,*
   539 S.W.3d 252, 259 (Tex. 2018) ......................................................... 5, 48

*City of Sweetwater v. Geron,*
   380 S.W.2d 550, 552 (Tex. 1964) ........................................................... 35

*Cmty. Health Sys. Prof. Servs. Corp. v. Hansen,*
   525 S.W.3d 671, 680 (Tex. 2017) .............................................. 5, 6, 8, 47

*Cockrell v. Tex. Gulf Sulphur Co.,*
   157 Tex. 10, 299 S.W.2d 672, 675 (Tex. 1956) .................................... 32, 35

*CPS Energy v. ERCOT,*
   671 S.W.3d 605, 626 n.170 (Tex. 2023) .................................................. 30

*Crosstex Energy Servs., L.P. v. Pro Plus, Inc.,*
   430 S.W.3d 384, 390 (Tex. 2014) ........................................................... 20

*Crowell v. Hous. Auth. of City of Dallas,*
   495 S.W.2d 887, 889 (Tex. 1973) ........................................................... 36

*ERCOT, Inc. v. Panda Power Generation Infrastructure Fund,*
   *LLC,* 619 S.W.3d 628, 634 (Tex. 2021) ..................................................... 9

*Extraction Res., Inc. v. Freeman,*
   555 S.W.2d 156, 159 (Tex. App.—El Paso 1977, writ ref'd n.r.e.) ........... 35

*Fitzgerald v. State,*
   9 S.W. 150, 151–53 (Tex. 1888) ........................................................ 35, 37

*Geary v. Two Bow Ranch Ltd. Partnership,*
No. 04-18-00610-CV*, 2020 WL 354763, at *25 (Tex. App.—San Antonio Jan. 22, 2020, pet. denied) (mem. op.) ........................................................................ 32

*Gill v. Hill,*
688 S.W.3d 863, 871 (Tex. 2024) ........................................................................ 12

*Goodstein v. Huffman,*
222 S.W.2d 259, 260 (Tex. App.—Dallas 1949, writ ref'd) .................................. 36

*Hogan v. Zoanni,*
627 S.W.3d 163, 169 (Tex. 2021) ........................................................................ 20

*In re Kasschau,*
11 S.W.3d 305, 312 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ............ 37

*In re Prudential Ins. Co. of Am.,*
148 S.W.3d 124, 129 (Tex. 2004) ........................................................................ 36

*In re State,*
698 S.W.3d 904 (Tex. 2024) .................................................................................. 4

*Jaster v. Comet II Constr., Inc.,*
438 S.W.3d 556, 569 (Tex. 2014) ........................................................................ 24

*Jim Olive Photography v. Univ. of Houston,*
*624 S.W.3d 764, 773* (Tex. 2021) ...................................................................... 33

*Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.,*
320 S.W.3d 829, 840–41 (Tex. 2010)................................................................... 26

*Lightning Oil Co. v. Anadarko E&P Onshore,*
LLC, 520 S.W.3d 39, 48 (Tex. 2017) .............................................................. 32, 33

*Lippincott v. Whisenhunt,*
462 S.W.3d 507, 509 (Tex. 2015) ........................................................................ 19

*Nabors Well Servs., Ltd. v. Romero,*
456 S.W.3d 553, 562 (Tex. 2015) ........................................................................ 26

*Owens–Corning Fiberglas Corp. v. Malone,*
972 S.W.2d 35, 43 (Tex. 1998) ............................................................................ 43

*Philadelphia Indemnity Ins. Co. v. White,*
490 S.W.3d 468, 475 (Tex. 2016) ........................................................................ 36

*Phillips v. State,*
161 S.W.3d 511, 514-515 (Tex. Crim. App. 2005) ............................................... 29

*Prairie View A & M Univ. v. Chatha,*
381 S.W.3d 500, 511 (Tex. 2012) .................................................................. 13, 14

*Proctor v. Andrews,*
972 S.W.2d 729, 733 (Tex. 1998) ........................................................................ 34

*Provident Life & Accident Ins. Co. v. Knott,*
128 S.W.3d 211, 215 (Tex. 2003) ..................................................................... 5, 22

*Reata Constr. Corp. v. City of Dallas,*
197 S.W.3d 371, 374 (Tex. 2006) ........................................................................ 23

*Republican Party of Tex. v. Dietz,*
    940 S.W.2d 86, 91 (Tex. 1997) ...................................................................... 30
*Severance v. Patterson,*
    370 S.W.3d 705, 709 (Tex. 2012) ................................................................. 33
*Smith v. Estill,*
    87 Tex. 264, 271, 28 S.W. 801, 805 (1894)................................................... 27
*Starwood Mgmt., LLC v. Swaim,*
    530 S.W.3d 673, 678 (Tex. 2017) ................................................................. 43
*State v. Ross,*
    573 S.W.3d 817, 825 (Tex. Crim. App. 2019) ............................................ 25
*Tex. Dep't of Fam. & Protective Servs. v. Grassroots Leadership,*
    *Inc.,* 717 S.W.3d 854, 874 (Tex. 2025) ............................................... 10, 11
*Tussey v. State,*
    494 S.W.2d 866, 870 n. 3 (Tex. Crim. App. 1973) ................................... 45
*Union Carbide Corp. v. Synatzske,*
    438 S.W.3d 39, 52 (Tex. 2014) ..................................................................... 24
*Weaver v. Head,*
    984 S.W.2d 744, 746 (Tex. App.—Texarkana 1999, no pet.) ................. 44
*Williams v. Lara,*
    52 S.W.3d 171, 184 (Tex. 2001) ................................................................... 11

## Statutes

Tex. Gov't Code § 311.016(3) ........................................................................ 15
Tex. Gov't Code §311.034............................................................................... 13
Tex. Gov't Code § 411.209 ............................................................................. 31
Tex. Gov't Code § 411.209(a) ........................................................... 23, 26, 46
Tex. Gov't Code § 411.209(b)–(c), (g) ......................................................... 26
Tex. Gov't Code § 411.209(f) ................................................................. 15, 18
Tex. Gov't Code § 411.209(h) ....................................................................... 21
Tex. Gov't Code Section 411.209 (d) – (g)................................................. 18
Tex. Nat. Res. Code § 34.011 ........................................................................ 33
Tex. Nat. Res. Code § 51.011(b) .................................................................. 34
Tex. Nat. Res. Code § 51.012........................................................................ 33
Tex. Parks & Wild. Code § 12.008(a) .......................................................... 33

## Other Authorities

Act of May 18, 2021, 87th Leg., R.S., ch. 203, §§ 1–2, sec. 411.172, 2021 Tex. Gen.
    Laws 447, 447–48 (adding Government Code subsection 411.172(i) and section
    411.1735) ......................................................................................................... 24

Act of May 2, 2019, 86th Leg., R.S., ch. 39, §§ 1–3, secs. 30.05, 30.06, 30.07, 2019 Tex. Gen. Laws 82, 82–85 (adding new defenses to Penal Code sections 30.05, 30.06, and 30.07) ................................................................................. 25

Act of May 20, 2021, 87th Leg., R.S., ch. 481, §§ 1–5, secs. 30.05, 30.07, 46.02, 46.035, 46.15, 2021 Tex. Gen. Laws 968, 968–70 (amending holstering requirements under Penal Code sections 30.05(f), 30.07(f), 46.02(a)(1), 46.035, 46.15(b)) ............................................................................................. 25

Act of May 21, 2019, 86th Leg., R.S., ch. 784, § 1, sec. 411.209, 2019 Tex. Gen. Laws 2229, 2229–30 (amending Government Code section 411.209) ........................ 26, 45

Act of May 23, 2005, 79th Leg., R.S., ch. 486, § 1, sec. 411.172, 2005 Tex. Gen. Laws 1347, 1347 (adding Government Code subsections 411.172(g) and 411.172(h)) ... 24

Act of May 23, 2007, 80th Leg., R.S., ch. 693, § 1, sec. 46.02, 2007 Tex. Gen. Laws 1318, 1318 (narrowing the scope of unlawful possession under Penal Code subsection 46.02(a)) ................................................................................. 24

Act of May 23, 2015, 84th Leg., R.S., ch. 593, § 1, sec. 411.209, 2015 Tex. Gen. Laws 2000, 2000–01 (adding Government Code section 411.209) .................................. 26

Act of May 24, 2007, 80th Leg., ch. 1214, § 1, sec. 46.15, 2007 Tex. Gen. Laws 4100, 4100–01 (narrowing the scope of Penal Code subsection 46.15(a)) ........................ 24

Act of May 25, 2007, 80th Leg., ch. 1222, § 6, sec. 46.15, 2007 Tex. Gen. Laws 4117, 4118–19 (narrowing the scope of Penal Code subsection 46.15(a)) ........................ 24

Act of May 25, 2011, 82d Leg., R.S., ch. 679, § 1, sec. 46.02, 2011 Tex. Gen. Laws 1640, 1640–41 (narrowing the scope of unlawful possession under Penal Code subsection 46.02(a)) ................................................................................. 25

Act of May 26, 2017, 85th Leg., R.S., ch. 1143, §§ 8–9, secs. 30.06, 30.07, 2017 Tex. Gen. Laws 4355, 4357 (adding Penal Code subsections 30.06(f) and 30.07(g)) ..... 25

Act of May 28, 2021, 87th Leg., R.S., ch. 1008, §§ 3–6, secs. 2155.1025, 30.06, 30.07, 2021 Tex. Gen. Laws 2679, 2679–80 (adding new defenses to Penal Code sections 30.05, 30.06, 30.07, Occupations Code section 2155.1025) .................................... 25

Act of May 29, 2015, 84th Leg., R.S., ch. 437, §§ 16–28, 47, secs. 411, 46.035, 2015 Tex. Gen. Laws 1706, 1710–14, 1719 (amending Government Code chapter 411, subchapter H, and amending the predecessor to Penal Code section 46.035) ...... 25

Act of May 31, 2003, 78th Leg., R.S. ch. 1178, §§ 1-2, sec. 30.05, 2003 Tex. Gen. Laws 3364, 3364 (narrowing the scope of firearm-related trespass through Penal Code subsections 30.05(f) and 30.06(e)) .............................................................. 24

Act of May 31, 2015, 84th Leg., R.S., ch. 438, § 1, sec. 411.2031, 2015 Tex. Gen. Laws 1723, 1723–24 (adding Government Code subsection 411.2031, which allowed licensed, concealed carry in public and private institutions of higher education) ................................................................................................. 25

S. RSCH. CTR., BILL ANALYSIS, Tex. S.B. 273, 84th Leg., R.S. (2015) ........................ 26

Tex. Att'y Gen. Op. No. KP-0108, (2016) at *1 ......................................................... 44

Rules

Tex. R. App. P. 29.3 ............................................................................................ 4
Tex. R. App. P. 33.1(a)(2)(A) ........................................................................... 40
Tex. R. App. P. 44.1 ......................................................................................... 43
Tex. R. Civ. P. 166a(c) ..................................................................................... 22
Tex. R. Evid. 201(b) ......................................................................................... 12
Tex. R. Evid. 201(c)(2) ..................................................................................... 11
Tex. R. Evid. 401 .............................................................................................. 42

# STATEMENT OF THE CASE

***Nature of the case:***   The State of Texas, along with individual Plaintiffs Maxx Juusola, Tracy Martin, and Alan Crider, filed suit against the City of Dallas; Kimberly Bizor Tolbert, in her official capacity as the Interim City Manager for the City of Dallas; and the State Fair of Texas concerning the State Fair's policy of excluding Texans lawfully carrying handguns from Fair Park. C.R. 271. Plaintiffs sought civil penalties, injunctive relief, and declaratory relief, with the State specifically pleading a claim under Texas Government Code section 411.209.

***Trial Court:***   298th Judicial District Court, Dallas County
The Honorable Emily G. Tobolowsky

***Disposition:***   The 298th District Court: (1) denied the Plaintiffs' Motion for Summary Judgment; (2) granted the City of Dallas's and Kimberly Bizor Tolbert's Motion for Traditional and No-Evidence Summary Judgment, dismissing the Plaintiffs' claims against the City and Tolbert with prejudice; (3) granted the State Fair of Texas's Traditional and No-Evidence Motion for Summary Judgment, dismissing the Plaintiffs' claims against the State Fair with prejudice; (4) sustained the State Fair's evidentiary objections; and (5) extended equally to the State Fair the court's ruling on the City Defendants' Objections and Motion to Strike Plaintiffs' Summary Judgment Evidence. C.R. 937-942.

## REFERENCES TO THE PARTIES

*Appellant*: State of Texas, AND Maxx Juusola, Tracy Martin, and Alan Crider

*Appellee*: City of Dallas and Kimberly Tolbert in her official capacity as Interim City Manager for the City of Dallas, AND State Fair of Texas

## REFERENCES TO THE RECORD

The Clerk's Record will be referenced as: C.R. [Bates page].

The Reporter's Record will be referenced as: R.R. Vol. 1, [PDF page]: [line of transcript].

## STATEMENT REGARDING ORAL ARGUMENT

Oral argument should not be permitted, as it will not be helpful to the Court. However, should this Court grant oral argument, Appellant requests to be allowed to participate.

# ISSUE PRESENTED

Texas Government Code section 411.209 prohibits the City of Dallas from taking any action that states or implies that a license holder who is carrying a handgun is prohibited from entering or remaining on a premises or other place owned or leased by the City. In 2024, the State Fair of Texas enacted a total ban of handguns from Fair Park, which it leases from the City. As the City failed to restrain its lessee, was the State entitled to summary judgment against the City and the State Fair under section 411.209?

## STATEMENT OF FACTS

The 277 acres known as Fair Park, at 1200 2nd Ave. / 3809 Grand Avenue, Dallas, Texas, is owned by Defendant-Appellee City of Dallas and managed by Fair Park First, a domestic nonprofit corporation. There are numerous public, city-owned buildings within Fair Park. C.R. 516, 540. In addition, there are various parking lots or parking areas, as well as an esplanade, a 700-foot-long reflecting pool with fountains, public sidewalks, and walkways within Fair Park. C.R. 540.

On May 21, 2003, the City of Dallas (in part through the office of the City Manager) entered into a Fair Park Contract to lease Fair Park to the Defendant-Appellee nonprofit corporation State Fair of Texas ("SFOT"). C.R. 693, 607, 700, 723. SFOT operates the annual State Fair of Texas exposition at Fair Park, which is open to the public for attendance during the months of September and October of each year, under the terms of its Fair Park Contract (a lease agreement) with the City of Dallas. C.R. 518 at ¶1.09, 520-521 at ¶¶3.01 and 4.01, 525 at ¶6.07. Prior to 2024, the SFOT had permitted persons licensed to carry handguns to enter Fair Park and attend the annual fair. C.R. 373.

On August 8, 2024, the Office of the Attorney General began receiving complaints, both oral and written, from Texans who were licensed to carry handguns under Chapter 411 of the Texas Government Code regarding an announced policy of the State Fair of Texas for the 2024 Fair. The policy prohibited license holders carrying handguns from entering or remaining on the premises of Fair Park, which is owned by the City of Dallas ("City") and leased to the State Fair of Texas. The complaints asserted that, through this policy, the City and SFOT were in violation of Texas Government Code section 411.209.

The Attorney General initiated an investigation of the complaints it received, and during this process noted that the State Fair of Texas, within the frequently asked questions (FAQs) page on its website, responded "No" to the question "Can Someone with a License to Carry (LTC) bring their firearm to the Fair?" See Appendix 1 (SFOT Webpage). On August 13, 2024, the Attorney General gave written notice to the chief administrative officer of the City under Texas Government Code section 411.209(f), which notice included a description of the violation of section 411.209, stated the amount of the proposed penalty for the first violation, and gave the City 15 days from receipt of the notice to cure the

violation and thereby avoid the penalty. The Attorney General also provided this notice to SFOT.

On August 28, 2024, the City provided its written response, wherein the City asserted it had not violated Texas Government Code section 411.209 and that any further inquiries from the Attorney General should be directed to SFOT. The City and SFOT did not cure the violation to avoid civil penalties.

### *Procedural History*

On August 29, 2024, Plaintiff-Appellant, the State of Texas, filed its Original Verified Petition in the 298th Judicial District Court of Dallas County against the City; Kimberly Bizor Tolbert, in her official capacity as the Interim City Manager for the City of Dallas;[1] and the State Fair of Texas; in which the State asserted four claims against the defendants and sought injunctive relief. On September 6, 2024, Individual Plaintiffs Maxx Juusola, Tracy Martin, and Alan Crider joined the State in the filing of the Plaintiffs' First Amended Verified Petition.

---

[1] Kimberly Bizor Tolbert has since been appointed Dallas City Manager as of January 22, 2025, after being named Interim City Manager in May 2024. *See* Office of the City Manager, https://dallascityhall.com/government/citymanager/pages/City-Manager.aspx (last visited October 16, 2025.

On September 19, 2024, the district court heard the Plaintiffs' application for temporary injunctive relief and denied injunctive relief against the Defendants.[2] Following this, the Plaintiffs filed the operative Third Amended Verified Petition on November 7, 2024. The parties filed cross-motions for summary judgment and various responses. On February 14, 2025, the District Court heard oral argument regarding the cross-motions. On June 24, 2025, the district court issued several orders concerning the cross-motions, issuing rulings therein (1) denying the Plaintiffs' Motion for Summary Judgment; (2) granting the City Defendants' Motion for Traditional and No-Evidence Summary Judgment, dismissing Plaintiffs' claims with prejudice against the City Defendants; (3) granting SFOT's Traditional and No-Evidence Motion for Summary Judgment, dismissing with prejudice all of Plaintiffs' claims against SFOT; (4) sustaining evidentiary objections SFOT made in its Motion; and (5) extending equally to SFOT the court's ruling on the City-Defendants' Objections and Motion to Strike Plaintiffs' Summary

---

[2] Following this denial, on September 20, 2024, the State filed its Emergency Motion for Relief Pending Appeal in this Court seeking temporary injunctive relief under Texas Rule of Appellate Procedure 29.3. On September 24, 2024, this Court denied the State's request. Following this denial, on September 25, 2024, the State filed its Petition for Writ of Mandamus in the Supreme Court. The Supreme Court ultimately denied the State mandamus relief. *See In re State*, 698 S.W.3d 904 (Tex. 2024).

Judgment Evidence. C.R. 937-942. However, the trial court's orders did not specify the exact grounds for granting such relief. It is from these orders that the State has taken the instant appeal.

## STANDARD OF REVIEW

"When both parties move for summary judgment and one motion is granted and one denied, the appellate court should determine all questions presented and render the judgment that the trial court should have rendered." *Argonaut Ins. Co. v. Baker*, 87 S.W.3d 526, 529 (Tex. 2002). "On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law." *City of Richardson v. Oncor Elec. Delivery Co.*, 539 S.W.3d 252, 259 (Tex. 2018). "[Courts] review a trial court's order granting summary judgment de novo, taking 'as true all evidence favorable to the nonmovant,' and 'indulg[ing] every reasonable inference and resolv[ing] any doubts in the nonmovant's favor.'" *Cmty. Health Sys. Prof. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017) (quoting *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). Where, as here, a trial court does not specify the grounds on which it granted the motion for summary

judgment, courts must affirm if any of the grounds asserted in the motion are meritorious. *Hansen,* 525 S.W.3d at 680.

## SUMMARY OF THE ARGUMENT

It is the public policy of this state that Texans who are licensed to carry handguns under the Texas Government Code may do so on public property unless prohibited by other law. This case concerns whether the City can circumvent that public policy through its lease to SFOT, a private entity.

The State is entitled to summary judgment against the City and SFOT concerning the State's claim under Texas Government Code section 411.209, and this Court should reverse the judgment of the trial court and render judgment for the State. Contrary to the City's arguments at the trial court, the State's claim is neither moot nor barred by the City's governmental immunity, of which the State pled a valid waiver. Further, the competent summary judgment evidence conclusively establishes that the City violated section 411.209 through its implied ratification of SFOT's exclusionary policy as well as the City's unlawful grant of authority through the Fair Park Contract. For the reasons discussed below, this Court should reverse.

# ARGUMENT

The State is entitled to judgment as a matter of law concerning its claim under Texas Government Code section 411.209, and thus this Court should reverse the judgment of the trial court and render judgment for the State. "When both parties move for summary judgment and one motion is granted and one denied, the appellate court should determine all questions presented and render the judgment that the trial court should have rendered." *Argonaut Ins. Co.*, 87 S.W.3d at 529. As the competent summary judgment evidence establishes not only that the trial court had jurisdiction over the State's claim but further that the Defendants violated Texas Government Code section 411.209, the Court should reverse the order of the trial court and render judgment for the State on its claim under that section.

## I. The trial court had subject matter jurisdiction over the State's claim under Texas Government Code section 411.209.

During the summary judgment proceedings, the City advanced two jurisdictional arguments relevant to the State's claim under section 411.209: (1) that the State's claim was moot as the policy at issue only concerned the 2024 Fair; and (2) the State failed to comply with statutory

prerequisites under section 411.209, and thus the City's governmental immunity precluded the State's claim. C.R. 315, 319. Because the orders of the trial court do not state the grounds upon which the trial court granted summary judgment for the Defendants and denied the same to the Plaintiffs, it is necessary to demonstrate that the trial court had subject matter jurisdiction over the State's claim under section 411.209 and, further, that the State had authority to bring its claim under section 411.209. *See Hansen*, 525 S.W.3d at 680 (Where a trial court does not specify the grounds on which it granted the motion for summary judgment, courts must affirm if any of the grounds asserted in the motion are meritorious.). To the extent the trial court's orders are premised on an incorrect jurisdictional determination, this Court should reverse the orders of the trial court and render a judgment consistent with a determination that the trial court had subject matter jurisdiction.

### a. The State's claim was not moot.

The City, as a matter of law, is not entitled to judgment on mootness grounds against the State's section 411.209 claim. The City previously asserted that the Plaintiffs' claims generally were mooted when the 2024 Fair ended and the exclusionary policy at issue along with it. C.R. 315.

For the reasons discussed below, this argument was incorrect because the State's claim was not moot, and it remains a justiciable controversy.

"The mootness doctrine—a constitutional limitation founded in the separation of powers between the governmental branches—prohibits courts from issuing advisory opinions." *ERCOT, Inc. v. Panda Power Generation Infrastructure Fund, LLC*, 619 S.W.3d 628, 634 (Tex. 2021). In *Grassroots Leadership, Inc.*, the Supreme Court provides its mootness analysis framework:

> Assessing mootness generally proceeds in two steps. First, we ask if the case is moot on its face—that is, has the live controversy come to an end. *See* [*Travelers Ins. Co v. Joachim*, 315 S.W.3d 860, 865 (Tex. 2010)]. If the answer is yes, we then ask if any "exception" to mootness applies. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). Given that the Constitution requires a live dispute between genuinely adverse parties, *see Joachim*, 315 S.W.3d at 865, this second step does not mean that the court may adjudicate a case lacking those features. It instead means that some cases that are moot on their face actually remain live—such as when collateral consequences flow from the resolution of a seemingly moot dispute, *see, e.g.*, *Carrillo v. State*, 480 S.W.2d 612, 616–18 (Tex. 1972), or when circumstances causing the injury, despite having ended, are likely to recur as between the same parties yet evade review because the injury is of short duration, *see, e.g.*, *Blum v. Lanier*, 997 S.W.2d 259, 264 (Tex. 1999) (applying the capable-of-repetition exception).

*Tex. Dep't of Fam. & Protective Servs. v. Grassroots Leadership, Inc.*, 717 S.W.3d 854, 874 (Tex. 2025). As will be shown below, the parties still have concrete interests in the outcome of the litigation, and it cannot be said that the State's claim is moot.

First, there remains a live controversy between the parties concerning the State's claim against the City for civil penalties under section 411.209(b). C.R. 861. While it is no longer possible for a court to grant injunctive relief concerning the 2024 Fair, the State's claim for civil penalties survives, and the State has a concrete interest in a determination of the City's liability. *See Grassroots Leadership, Inc.,* 717 S.W.3d at 877 (". . . the issue that animated a lawsuit may become moot, but if a statute entitles a litigant to fees based on the merit of the claim, what seems like a moot case may remain live."). Therefore, the State's claim is not moot.

Second, while the issue of SFOT's exclusionary policy and the City's implicit ratification could possibly appear facially moot, the issue would qualify as one that is capable of repetition, yet evading review. *See id.* at 883. To invoke the "capable of repetition, yet evading review" exception, a plaintiff must prove that "(1) the challenged action was too short in

duration to be litigated fully before the action ceased or expired; and (2) a reasonable expectation exists that the same complaining party will be subjected to the same action again." *Id.* at 884 (quoting *Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001)). Considering the first prong of the exception, SFOT's offending policy was too short in duration to be litigated fully before the action ceased or expired as the 2024 Fair ran from September 27, 2024, to October 20, 2024. C.R. 312. Given that it took until November 20, 2024, for all the parties to submit their cross-motions for summary judgment, this controversy could not have been fully litigated within the duration of the 2024 Fair. Concerning the second prong, the City has taken the consistent position that the Fair Park Contract provided for a valid conveyance of the authority upon which SFOT has relied. Thus, the State has had a reasonable expectation that SFOT would continue its exclusionary policies into the future, which now has been confirmed by the continuation of SFOT's policy for the 2025 Fair.[3] See *Williams*, 52 S.W.3d at 184 (stating a reasonable expectation

---

[3] As the case at bar has been pending since August 29, 2024, two Fairs have come to pass during this time. In the time since the district court made its rulings on the cross-motions for summary judgment, the State Fair has reaffirmed its exclusionary policy for the 2025 Fair. *See* Appendix 1. To the extent as is necessary to demonstrate this Court's jurisdiction over this appeal and the lack of mootness regarding the State's claim, pursuant to Texas Rule of Evidence 201(c)(2), the State requests that the Court take judicial notice of the State Fair's policy for the 2025 Fair. "An appellate court may take

exists that the same complaining party will be subjected to the same action again). For these reasons, if the State's claim appears facially moot, the "capable of repetition, yet evading review" exception would be applicable.

For all the reasons discussed above, the State's claim remains a justiciable controversy, and the Court should reverse the trial court's orders to the extent they are predicated on a determination that the State's claim was moot.

### b. The State fulfilled all statutory prerequisites.

The State met all statutory prerequisites to suit provided by Texas Government Code section 411.209. To the extent the trial court's orders were based on the City's arguments that the State failed to satisfy statutory prerequisites under section 411.209, and that the State's claim, therefore, was barred by the City's governmental immunity, such a determination would constitute reversible error. While the City argued that the State failed to fulfill statutory prerequisites, these arguments do

---

judicial notice of a relevant fact that is either generally known within the trial court's territorial jurisdiction or *can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.*" *Gill v. Hill*, 688 S.W.3d 863, 871 (Tex. 2024) (emphasis added); *see* Tex. R. Evid. 201(b). The State Fair's continuation of its exclusionary policy for the 2025 Fair is a fact that can be readily determined from a source whose accuracy cannot reasonably be questioned – namely, the State Fair's own website where it published its original exclusionary policy for the 2024 Fair.

not reflect the Legislature's intent in section 411.209. For the reasons discussed below, this Court should reverse the trial court's orders to the extent those orders are based on a determination that the State failed to satisfy statutory prerequisites and that, therefore, its claim was barred.

### i. The State has met all statutory prerequisites.

Texas Government Code section 311.034 provides, *inter alia,* "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." In analyzing the amendment which added this language to section 311.034, the Texas Supreme Court stated, "[t]his amendment evinces the Legislature's intent that all statutory prerequisites are now jurisdictional requirements as to governmental entities and are properly asserted in a plea to the jurisdiction." *Prairie View A & M Univ. v. Chatha,* 381 S.W.3d 500, 511 (Tex. 2012). The opinion provides a framework for determining when a statute provides statutory, jurisdictional prerequisite:

> The term "statutory prerequisite" has three components. First, it is of obvious mention that in order to fall within the ambit of section 311.034, a prerequisite must be found in the relevant statutory language. *See* [*Colquitt v. Brazoria Cnty.,* 324 S.W.3d 539, 542 (Tex.2010)] (recognizing that although the

statute called for pre-suit notice, it also provided that formal notice is not required when the government has obtained timely actual notice, and thus because the government had actual notice, the failure to provide formal notice did not act as a statutory prerequisite to suit). Second, the prerequisite must be a requirement. And finally, the term "pre" indicates the requirement must be met before the lawsuit is filed. *See Roccaforte v. Jefferson Cnty.*, 341 S.W.3d 919, 925 (Tex. 2011) (holding that post-suit notice requirement was not jurisdictional, even in light of section 311.034, because post-suit notice is not a "prerequisite" to suit). Thus, according to the plain language of section 311.034, the term "statutory prerequisite" refers to statutory provisions that are mandatory and must be accomplished prior to filing suit.

*Id.* at 511–12. For the reasons discussed below, the State met all statutory prerequisites mandated by section 411.209, and this Court should reverse the trial court's orders to the extent those orders are inconsistent with that fact.

The State met the required statutory prerequisites required of the Attorney General by Texas Government Code section 411.209(f). Subsection (f) provides the applicable conditions precedent relevant to the Attorney General:

(f) *Before a suit may be brought against a state agency or a political subdivision of the state for a violation of Subsection (a)*, the attorney general *must* investigate the complaint to determine whether legal action is warranted. If legal action is warranted, the attorney general *must* give the chief administrative officer of the agency or political subdivision charged with the violation a written notice that:

(1) describes the violation;

(2) states the amount of the proposed penalty for the violation; and

(3) gives the agency or political subdivision 15 days from receipt of the notice to cure the violation to avoid the penalty, unless the agency or political subdivision was found liable by a court for previously violating Subsection (a).

Tex. Gov't Code § 411.209(f) (emphases added). "Must" creates or recognizes a condition precedent. Tex. Gov't Code § 311.016(3). "Must" appears twice in subsection (f): first, it indicates the Attorney General is required to investigate *complaints* it receives; and second, it indicates the Attorney General must provide notice to the agency or subdivision in compliance with the subsection before a cause of action under section 411.209 may be filed.

The Attorney General met these two explicit conditions precedent prior to bringing suit against the City. In 2024, the Attorney General received multiple verbal and written complaints from residents or persons licensed to carry a handgun alleging violations of section 411.209 by the City and/or the State Fair at Fair Park. C.R. 275-276 at ¶¶ 5.1 and 5.2. The written complaints provided the Attorney General with notice that described the Fair Park location and links to the State Fair's

webpage regarding the published prohibitive policy, showing that the City of Dallas was in violation of section 411.209(a). C.R. 92-96, 466-468, 480-481, 499-500. The assigned investigator also received complaints from staff within the office of the Attorney General. C.R. 276 at ¶ 5.2. The Attorney General investigated those complaints, as required by subsection (f). C.R. 276 at ¶ 5.3 . The Attorney General already knew that the City of Dallas owned or leased Fair Park. C.R. 437, 440. The investigator reviewed the complaints and attached photos, reviewed the State Fair of Texas webpages, and believed that the City of Dallas was communicating, stating, or implying that license holders were prohibited from entering or remaining on Fair Park premises (which are owned or leased by the City of Dallas) in violation of section 411.209(a). C.R. 276 at ¶ 5.3, 458-459, 472. The Attorney General concluded legal action was warranted and on August 13, 2024, sent the administrative head of the City written notice of the violation in compliance with subsection 411.209(f). C.R. 104. Fifteen days later, on August 28, 2024, through the city attorney, the City responded in writing asserting there was no 411.209 violation. C.R. 124. Thereafter, the Attorney General, pursuant to 411.209 subsection (g), initiated the instant litigation. C.R. 14

(Plaintiffs' Original Verified Pet.). The Attorney General thus complied with the required conditions precedent as imposed upon him by the Legislature in subsections (f) and (g), and thus the State has a cause of action against the City. The City's arguments are erroneous for the reasons discussed below.

### ii. Texas Government Code section 411.209 never qualifies only certain complaints as "actionable."

In its Motion for summary judgment, the City argued that "the Attorney General had no authority to file this suit, and this Court has no jurisdiction to hear it." C.R. 320. Based on its construction of section 411.209, the City argued that the Attorney General could only investigate "actionable" complaints if these requirements were met:

> (1) 'Written notice' from an individual Texan to the City of the alleged Section 411.209 (a) Violation, then
> (2) three-business-day cure period for the City, then
> (3) That individual filing complaint with the Attorney General, which 'must include evidence of the Violation and copy of the written notice provided to the [City],' then
> (4) An investigation by the Attorney General 'determin[ing] whether legal action is warranted,' then
> (5) Written notice from the Attorney General to the City, then
> (6) 15—day cure period, then and only then
> (7) The Attorney General may file suit.

*See* C.R. 319 (City's Motion for Summary Judgment) referring to Tex. Gov't Code Section 411.209 (d) – (g) (emphasis removed). The City asserted that failure to comply with these steps was a jurisdictional defect.

Implicit within this argument is the assertion that the Attorney General only accrues a valid cause of action when he receives a written "actionable complaint" from a complaining citizen who has properly availed himself of Texas Government Code section 411.209(d). The City essentially argued that alleged defects in a citizen complainant's compliance with the statute foreclosed the Attorney General's authority to bring a suit under section 411.209, which ultimately went to the jurisdiction of the trial court. However, for the reasons discussed below, the City's arguments are not borne out in the text of section 411.209.

As discussed above, and contrary to the City's argument, section 411.209(f) mandates that the Attorney General investigate "*the complaint*" before filing suit but does not qualify what complaints the Attorney General may investigate. The only prerequisite provided under subsection (d) is what *a Texas resident or license holder* must follow prior to submitting a written complaint to the Attorney General. This provision

does nothing to limit the Attorney General's authority to investigate an oral complaint from a resident or license holder nor does it limit the Attorney General's authority to investigate complaints received from staff within the Office of the Attorney General. It is subsections (f) and (g) that address the Attorney General's role in bringing suit for violations of subsection (a). Neither subsection (f) nor (g) limits the authority of the Attorney General to bring suit for written complaints that residents and license holders submit in compliance with subsection (d). Subsections (f) and (g) merely require that the Attorney General investigate a complaint, give 15 days' written notice and time to cure, and determine if legal action is warranted. That is all. As the Supreme Court has noted, a court's "objective in construing a statute is to give effect to the Legislature's intent, which requires it to first look to the statute's plain language." *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509 (Tex. 2015). "If that language is unambiguous, [courts] interpret the statute according to its plain meaning." *Id.* This language is quite clear in these simple requirements. However, the City creates a complexity, arguing that the Legislature imposed a dichotomy, *sub silentio,* between "actionable" written complaints. This is a qualification not found in subsection (f),

which apparently the City defines by subsection (d), and the complaints the Attorney General received that predicated this case. Ultimately, the Legislature had every opportunity to restrict the complaints the Attorney General could investigate to bring a claim, and it chose not to do so. *See Hogan v. Zoanni*, 627 S.W.3d 163, 169 (Tex. 2021) ("Moreover, we 'presume the Legislature chose statutory language deliberately and purposefully,'" citing *Crosstex Energy Servs., L.P. v. Pro Plus, Inc.*, 430 S.W.3d 384, 390 (Tex. 2014), and that it likewise excluded language deliberately and purposefully, citing *Cameron v. Terrell & Garrett, Inc.*, 618 S.W.2d 535, 540 (Tex. 1981)."). Thus, the City's construction was fundamentally extratextual and should have been rejected by the trial court.

As the Attorney General properly fulfilled all statutory prerequisites section 411.209 required, a valid cause of action accrued under that section. To the extent the trial court's orders were based on a determination that it lacked jurisdiction for the State's failure to comply with statutory prerequisites, this Court should reverse and render judgment consistent with the Court having subject matter jurisdiction over the State's claim.

### c. The State pleaded a waiver of the City's governmental immunity.

As the State complied with all statutory prerequisites, the State pleaded an adequate waiver of the City's governmental immunity under Texas Government Code section 411.209(h). The State brought its section 411.209 claim against the City, a political subdivision of this state, for the City's violation of subsection (a) of that section. C.R. 275-280 at ¶ 5.1–5.13 (Plaintiffs' Third Amended Petition). Subsection (h) provides that "sovereign immunity to suit is waived and abolished to the extent of liability created by this section." Tex. Gov't Code § 411.209(h). For the reasons discussed above responding to the City's argument about section 411.209's statutory prerequisites, the State did plead a valid waiver of the City's immunity. To the extent the trial court's orders were premised on a determination that the trial court lacked subject matter jurisdiction, either due to mootness or the City's sovereign immunity, or both, such a determination was reversible error that this Court should reverse and render judgment consistent with the trial court having subject matter jurisdiction over the State's claim.

## II. The Court should reverse and render summary judgment for the State.

The State is entitled to summary judgment on the issue of whether the City and SFOT violated Texas Government Code section 411.209. To prevail on a traditional motion for summary judgment, the movant must "show that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law." *See Provident Life*, 128 S.W.3d at 216 (citations omitted); Tex. R. Civ. P. 166a(c). An issue is conclusively established "if reasonable minds could not differ about the conclusion to be drawn from the facts in the record." *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998). Based on the competent summary judgment evidence, there is no genuine issue of material fact that the Defendants violated section 411.209, and thus the State is entitled to summary judgment on its claim.

### a. The City violated section 411.209.

The State is entitled to summary judgment on the issue of the City's liability under section 411.209 because the City has violated that law through its ratification of SFOT's exclusionary policy.

### i. Section 411.209 applies to the City and Fair Park.

The City is a political subdivision covered by section 411.209; therefore, section 411.209 applies to the City and its property. Section 411.209(a) makes clear that the statute applies to "a state agency or a political subdivision of the state." Tex. Gov't Code § 411.209(a). Cities are political subdivisions of the State. *Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374 (Tex. 2006). Therefore, section 411.209 applies to the City. Subsection (a) further specifies that its protections apply to "premises or other place *owned* or leased *by the governmental entity*." Tex. Gov't Code § 411.209(a) (emphases added). Statutory interpretation must follow the plain, contemporaneous meaning of the law's language. *Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 847 (Tex. 2024). If the statute is clear and unambiguous, courts must read the language according to its common meaning without resort to rules of construction or extrinsic aids. *Abutahoun v. Dow Chem. Co.*, 463 S.W.3d 42, 46 (Tex. 2015). Therefore, section 411.209 applies to property that the City owns.

Furthermore, subsection (a) includes no caveats to its application pertaining to property that the governmental entity leases to a third party. "We do not read words into a statute to make it what we consider

to be more reasonable, rather we may do so only to prevent an absurd result." *Union Carbide Corp. v. Synatzske*, 438 S.W.3d 39, 52 (Tex. 2014). As the Texas Supreme Court noted in its decision in *Jaster v. Comet II Constr., Inc.*, "[t]he bar for reworking the words our Legislature passed into law is high, and should be. The absurdity safety valve is reserved for truly exceptional cases, and mere oddity does not equal absurdity." *Jaster v. Comet II Constr., Inc.,* 438 S.W.3d 556, 569 (Tex. 2014) (quoting *Combs v. Health Care Serv. Corp.*, 401 S.W.3d 623, 630 (Tex. 2013) (internal quotations omitted). Section 411.209's application to government properties leased to private entities is not an exceptional case and, in fact, fits comfortably into the Legislature's continued commitment to the expansion of protections toward Texans who seek to lawfully bear arms, licensed or otherwise.[4] Thus, the plain language of subsection (a)

---

[4] Since the 1997 passage of Penal Code section 30.06 specifying the narrow grounds on which licensed possession of a concealed firearm constitutes trespass, the years that followed have seen a steady expansion of eligibility for licensure. Act of May 23, 2005, 79th Leg., R.S., ch. 486, § 1, sec. 411.172, 2005 Tex. Gen. Laws 1347, 1347 (adding Government Code subsections 411.172(g) and 411.172(h)); Act of May 18, 2021, 87th Leg., R.S., ch. 203, §§ 1–2, sec. 411.172, 2021 Tex. Gen. Laws 447, 447–48 (adding Government Code subsection 411.172(i) and section 411.1735), while the Penal Code's geographic restrictions on lawful possession shrank, *see, e.g.*, Act of May 31, 2003, 78th Leg., R.S. ch. 1178, §§ 1-2, sec. 30.05, 2003 Tex. Gen. Laws 3364, 3364 (narrowing the scope of firearm-related trespass through Penal Code subsections 30.05(f) and 30.06(e)); Act of May 23, 2007, 80th Leg., R.S., ch. 693, § 1, sec. 46.02, 2007 Tex. Gen. Laws 1318, 1318 (narrowing the scope of unlawful possession under Penal Code subsection 46.02(a)); Act of May 24, 2007, 80th Leg., ch. 1214, § 1, sec. 46.15, 2007 Tex. Gen. Laws 4100, 4100–01 (narrowing the scope of Penal Code subsection 46.15(a)); Act of May 25, 2007, 80th Leg., ch. 1222, § 6, sec. 46.15, 2007 Tex. Gen. Laws 4117, 4118–19 (narrowing the scope of Penal Code subsection 46.15(a)); Act of May 25, 2011, 82d Leg., R.S., ch. 679, § 1, sec. 46.02, 2011 Tex. Gen. Laws 1640, 1640–41 (narrowing the scope of unlawful possession under Penal Code

necessitates the application of it to *all* premises owned by a governmental entity, including those leased to a third-party. Based on the plain language of subsection (a), section 411.209 applies to Fair Park, as it is owned by the City. See C.R. 102, 380.

## ii. The City may not take *any* action that states or implies a license holder carrying a handgun is prohibited from Fair Park.

As section 411.209 applies to the City and Fair Park, the City may not take *any* action that states or implies that a license holder who is carrying a handgun under the authority of subchapter H, Chapter 411 of the Government Code is prohibited from entering or remaining on the premises of Fair Park except for specific portions of Fair Park where license holders are prohibited from carrying a handgun by section 46.03, Penal Code, or other law. Key then to determining whether the City has

subsection 46.02(a)); Act of May 31, 2015, 84th Leg., R.S., ch. 438, § 1, sec. 411.2031, 2015 Tex. Gen. Laws 1723, 1723–24 (adding Government Code subsection 411.2031, which allowed licensed, concealed carry in public and private institutions of higher education); Act of May 26, 2017, 85th Leg., R.S., ch. 1143, §§ 8–9, secs. 30.06, 30.07, 2017 Tex. Gen. Laws 4355, 4357 (adding Penal Code subsections 30.06(f) and 30.07(g)); Act of May 2, 2019, 86th Leg., R.S., ch. 39, §§ 1–3, secs. 30.05, 30.06, 30.07, 2019 Tex. Gen. Laws 82, 82–85 (adding new defenses to Penal Code sections 30.05, 30.06, and 30.07); Act of May 28, 2021, 87th Leg., R.S., ch. 1008, §§ 3–6, secs. 2155.1025, 30.06, 30.07, 2021 Tex. Gen. Laws 2679, 2679–80 (adding new defenses to Penal Code sections 30.05, 30.06, 30.07, Occupations Code section 2155.1025). The Legislature also expanded the means by which license holders could lawfully carry firearms. *See* Act of May 29, 2015, 84th Leg., R.S., ch. 437, §§ 16–28, 47, secs. 411, 46.035, 2015 Tex. Gen. Laws 1706, 1710–14, 1719 (amending Government Code chapter 411, subchapter H, and amending the predecessor to Penal Code section 46.035); Act of May 20, 2021, 87th Leg., R.S., ch. 481, §§ 1–5, secs. 30.05, 30.07, 46.02, 46.035, 46.15, 2021 Tex. Gen. Laws 968, 968–70 (amending holstering requirements under Penal Code sections 30.05(f), 30.07(f), 46.02(a)(1), 46.035, 46.15(b)); see also, *e.g.*, *State v. Ross*, 573 S.W.3d 817, 825 (Tex. Crim. App. 2019).

acted in violation of section 411.209 is the meaning of the word "any" in that section.

In 2019, the Legislature amended section 411.209 to broaden its scope and liability due to recalcitrant political subdivisions throughout the state.[5] Integral to these amendments was the inclusion of the word "any" in section 411.209. Courts have recognized that the word "'any' has an expansive meaning." *Nabors Well Servs., Ltd. v. Romero*, 456 S.W.3d 553, 562 (Tex. 2015). Indeed, "Texas courts defining 'any' have generally interpreted it to mean 'every,'" which aligns with "[t]he more conventional grammatical meaning of the term." *Kirby Lake Dev., Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 840–41 (Tex. 2010). When considering these authorities, it is apparent that the City is liable for *any* action it takes that even only implies that a license holder carrying a

---

[5] Certain political subdivisions attempted to restrict the breadth of Texans' firearm rights. *See* S. RSCH. CTR., BILL ANALYSIS, Tex. S.B. 273, 84th Leg., R.S. (2015) (discussing "uncooperative governments [that] post signs to ban Texas citizens from carrying where it is legal"). The Legislature responded by prohibiting political subdivisions from frustrating the democratic premium placed on licensed possession, Act of May 23, 2015, 84th Leg., R.S., ch. 593, § 1, sec. 411.209, 2015 Tex. Gen. Laws 2000, 2000–01 (adding Government Code section 411.209)—resulting in categorical prohibition on "any action" that "states or implies" otherwise and subjecting violators to daily civil penalties, mandamus, and other equitable relief. Act of May 21, 2019, 86th Leg., R.S., ch. 784, § 1, sec. 411.209, 2019 Tex. Gen. Laws 2229, 2229–30 (amending Government Code section 411.209). To be sure, "any action[] includ[es] . . . the provision of notice . . . that a license holder who is carrying a handgun under the authority of this subchapter is prohibited from entering or remaining on a premises or other place owned . . . by the governmental entity," so long as license holders are not "prohibited from carrying . . . by section 46.03, Penal Code, or other law." Tex. Gov't Code § 411.209(a). Notably, a political subdivision that transgresses this command—either expressly or by implication—is subject to daily civil penalties, mandamus, and other equitable relief. *Id.* § 411.209(b)–(c), (g).

handgun is prohibited from entering or remaining on the premises of Fair Park. As discussed below, the City has violated this broad prohibition.

### iii. The City has taken action through its implicit ratification of SFOT's policy.

As noted above, the City's legal position is that the City has not "acted" in any way such that it could be liable under section 411.209; and rather, that only SFOT, its lessee, has "acted." See C.R. 757, 138. This is not accurate. The City has implicitly acted to exclude license holders carrying handguns from Fair Park through its tacit ratification of SFOT's exclusionary policy. "Ratification is the adoption or confirmation by a person with knowledge of all material facts of a prior act which did not then legally bind him and which he had the right to repudiate." *BPX Operating Co. v. Strickhausen*, 629 S.W.3d 189, 196 (Tex. 2021) (quotations omitted). "[W]hether one party has ratified changes to a contract is also a matter of intent." *Id.* (citing *Smith v. Estill*, 87 Tex. 264, 271, 28 S.W. 801, 805 (1894) ("To constitute a ratification, it must appear that the acts relied upon were done with a full knowledge of all the facts, and with intent to adopt the unauthorized act in question.")).

When considering the record, the City's leasehold provision of authority to SFOT provides the basis of SFOT's exclusionary policy. The City entered into the Fair Park Contract with SFOT, granting SFOT certain property rights over Fair Park. C.R. 522. The Fair Park Contract is silent regarding license holders carrying handguns on the premises of Fair Park, but it does contain a provision stating that it shall be construed according to the laws of Texas. C.R. 535. Before it began selling tickets for the 2024 Fair, SFOT previously permitted license holders carrying handguns to enter and remain on the premises of Fair Park. C.R. 373. Then, in the run up to the 2024 State Fair, SFOT began relying on the same Fair Park Contract as the basis for effectuating its ban of all handguns at Fair Park. C.R. 338. It is the City's position that SFOT may legally effectuate its policy as the lessee of Fair Park. C.R. 103.

The City has never attempted to clarify with SFOT that the Fair Park Contract does not allow it to institute its ban at issue. Instead, the City maintains that its lessee has acted completely within the terms of the Fair Park Contract. C.R. 390 ("SFOT occupies and controls the Fair Park grounds and decides who is admitted into or prohibited from entering Fair Park. In other words, during the Fair Operations Period,

SFOT – not the City – controls who is allowed entry into Fair Park and what they can bring with them."). As the City has affirmed SFOT's ability to exclude license holders carrying handguns from Fair Park and has refused to take action to restrain SFOT, it is clear that the City has ratified SFOT's construction of the Fair Park Contract and SFOT's understanding of the rights the City conveyed to it.

As discussed above, subsection 411.209(a)'s broad liability for the City can be triggered by *any* action taken by the City that states or *implies* that license holders carrying handguns may be excluded from Fair Park where not otherwise required by law. Through the City's implicit ratification, the City has taken an action that implies that license holders carrying handguns under the authority of the Texas Government Code are prohibited from entering or remaining on the premises of City property, thus violating section 411.209. To conclude otherwise would create an indifferent-lessor exception to the Government Code's broad mandate, *cf., e.g., Phillips v. State*, 161 S.W.3d 511, 514-515 (Tex. Crim. App. 2005) (rejecting claim that "any bar owner [could] thwart any undercover operation . . . merely by posting a 'no trespassing by persons under 21' sign" where doing so would render associated statutory

provisions superfluous), and would frustrate the general principle that the government cannot shield itself from liability by enlisting a private party to act as its instrument or agent, *cf., e.g.*, *CPS Energy v. ERCOT*, 671 S.W.3d 605, 626 n.170 (Tex. 2023); *Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 91 (Tex. 1997); *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295–96 (2001) (discussing fair attribution through "overt or covert" encouragement, delegations of "public functions," or where "government is 'entwined in [the intermediary's] management or control'").

Therefore, the City has acted to exclude license holders carrying handguns in Fair Park in contravention of section 411.209, effectively circumventing the public policy established by the Legislature in that statute. The State is thus entitled to summary judgment on the issue of the City's liability under section 411.209.

### iv. The City has also taken action through the Fair Park Contract.

Aside from the City's implied ratification of SFOT's ban, the City has also acted by implication to exclude license holders carrying handguns from Fair Park through its unlawful grant of authority to prohibit license holders carrying guns through the Fair Park Contract.

As established above, the City may not take *any* action that states or *implies* that license holders carrying handguns are excluded from Fair Park. Tex. Gov't Code § 411.209. Yet, even so, the City has explicitly or implicitly acted through its provision of leasehold rights to SFOT to the extent SFOT is relying on the Fair Park Contract to enact its policy. The City entered into the Fair Park Contract with SFOT, granting SFOT certain property rights over Fair Park. *See* C.R. 522 at "5.01 Use by the State Fair." Now, in turn, SFOT is unlawfully relying on the Fair Park Contract as the basis for effectuating its ban of all handguns at Fair Park, contrary to section 411.209. C.R. 338.

SFOT's attempt to evade the requirements of section 411.209 and to exclude license holders carrying handguns from Fair Park, something the City is forbidden from doing under section 411.209, has no legally supportable basis. SFOT may not exclude license holders carrying handguns from Fair Park because SFOT's rights as a lessee under the Fair Park Contract are limited by the same statutory constraints placed on the City by section 411.209. The City, SFOT's lessor, could not grant greater rights to SFOT than the rights the City itself held. Because the

City had no right to exclude license holders, it had no such rights to convey to SFOT.

Under Texas property law, a deed can pass no greater estate than that owned by the grantor. *Cockrell v. Tex. Gulf Sulphur Co.*, 157 Tex. 10, 299 S.W.2d 672, 675 (Tex. 1956). In addition, a lease cannot grant a lessee a greater estate or right than is owned by the lessor. *Geary v. Two Bow Ranch Ltd. Partnership,* No. 04-18-00610-CV*,* 2020 WL 354763, at *25 (Tex. App.—San Antonio Jan. 22, 2020, pet. denied) (mem. op.). The City was prohibited from excluding license holders carrying handguns under section 411.209. The City's estate and rights did not include the right to prohibit or exclude under this section, so the City lacked those rights to convey to SFOT. SFOT's claim that its rights are broader than those of its lessor and include the right to prohibit or exclude fails to recognize that the Fair Park Contract could not have conveyed such rights.

A property owner's rights are often described as a bundle of rights, or a bundle of sticks. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 48 (Tex. 2017). "And 'an owner of realty has the right to exclude all others from the use of the property, one of the most essential

sticks in the bundle of rights that are commonly characterized as property.'" *Id.* (quoting *Severance v. Patterson*, 370 S.W.3d 705, 709 (Tex. 2012) (quoting *Dolan v. City of Tigard*, 512 U.S. 374, 384, 393 (1994)). But the right to exclude is both dictated and circumscribed by the scope of an owner's rights in the property, *Lightning Oil Co.,* 520 S.W.3d at 49, and by applicable state law. "[P]roperty does not refer to a thing but rather to the rights between a person and a thing." *Lightning Oil Co.,* 520 S.W.3d at 49 (quoting *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 382–83 (Tex. 2012))*; Jim Olive Photography v. Univ. of Houston, 624 S.W.3d 764, 773* (Tex. 2021). The Texas Supreme Court recognizes these limitations in many areas:

> Limitations on property rights may be by consent of the owner, state condemnation with payment of just compensation, appropriate government action under its police power (such as addressing nuisances), sufficient proof of use by persons other than the owner that creates an estoppel-based right to continuing use (easements) or pre-existing limitations in the rights of real property owners that have existed "since time immemorial. . . ."

*Severance*, 370 S.W.3d at 710. [6]

---

[6] The Texas Legislature has enacted various statutes governing the leasing and application of government land to entities in specific circumstances. Generally, the School Land Board and Land Commissioner hold the authority necessary to manage the lease of public-school land, but this authority is subject to restrictions and limitations imposed by the Texas Constitution and state laws. *See* Tex. Nat. Res. Code § 51.012. Similarly, other government entities like the Texas Parks and Wildlife Department and the Texas Department of Criminal Justice are granted land leases under specific circumstances. *See* Tex. Parks & Wild. Code § 12.008(a), Tex. Nat. Res. Code § 34.011. Another

Here, the limitation on the City's right to prohibit or exclude circumscribes the estate the City possesses and can convey. Thus, SFOT can only take the rights that the City possesses and can convey.

The Legislature has circumscribed the City's rights over its property through section 411.209. Initially, "[a] home rule city derives its power not from the Legislature but from Article XI, Section 5 of the Texas Constitution . . . .[I]t is necessary to look to the acts of the legislature not for grants of power to such cities but only for limitations on their powers." *Proctor v. Andrews*, 972 S.W.2d 729, 733 (Tex. 1998) (quoting *Lower Colorado River Auth. v. City of San Marcos*, 523 S.W.2d 641, 643 (Tex. 1975)) (internal citations omitted). "While a home rule city thus has all the powers of the state not inconsistent with the Constitution, the general laws, or the city's charter, Tex. Const. art. XI, § 5, these broad powers may be limited by statute when the Legislature's intention to do so appears with unmistakable clarity." *Proctor,* 972 S.W.2d at 733 (citing, e.g., *Dallas Merchant's and Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490–491 (Tex. 1993); *City of Sweetwater v. Geron*, 380 S.W.2d

common restriction involves leasing land within 2,500 feet of a military base, which requires the Land Commissioner or a designee to consult with military authorities to ensure the lease does not adversely affect the base's mission. *See* Tex. Nat. Res. Code § 51.011(b).

550, 552 (Tex. 1964). The legislature retains ultimate authority over the policies governing leases of public lands. *See Fitzgerald v. State*, 9 S.W. 150, 151–53 (Tex. 1888). Section 411.209 sets out the Legislature's intent with "unmistakable clarity" to restrict the property rights of political subdivisions, which includes municipalities like the City, to the extent it concerns the rights of those licensed to carry.[7] Under section 411.209, the City does not have the right to exclude license holders carrying handguns from its property generally. Consequently, the City cannot convey such a right to its lessee, SFOT, and any attempt to convey such a right would be unlawful and void. *See Extraction Res., Inc. v. Freeman,* 555 S.W.2d 156, 159 (Tex. App.—El Paso 1977, writ ref'd n.r.e.) ("It is elementary that one cannot convey what he does not own.") (subsequently citing *Cockrell v. Texas Gulf Sulfur Co.*, 157 Tex. 10, 299 S.W.2d 672 (1956)).[8]

Furthermore, the Supreme Court has recognized that parties cannot circumvent public policy established by the Legislature concerning restrictions on property usage. In *Philadelphia Indemnity Ins. Co. v. White*, the Court affirmed that the Legislature has the power

---

[7] *See supra* note 5 and accompanying text.
[8] "We take it that no authority need be cited for the proposition that a deed can pass no greater estate than that owned by the grantor. Likewise it is fundamental that a warranty deed will pass all of the estate owned by the grantor at the time of the conveyance unless there are reservations or exceptions which reduce the estate conveyed." *Cockrell*, 157 Tex. 10, 299 S.W.2d at 672.

to create laws that limit, expand, or modify lease agreements, particularly when such limitations serve public policy and align with constitutional principles. *See Philadelphia Indemnity Ins. Co. v. White*, 490 S.W.3d 468, 475 (Tex. 2016). The Court noted that where the Property Code imposes specific limitations in the leasehold-repair context—restrictions rooted in public policy—it prevents parties from creating lease terms that circumvent the statute. *Id*. This reflects a broader judicial consensus that contractual freedoms are not absolute and can be constrained by legislative action to ensure compliance with statutory and public policy mandates. The Court's decision aligns with similar rulings affirming the supremacy of public policy in contracting contexts. See *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 129 (Tex. 2004) (recognizing that parties may contract freely as long as the agreement does not violate the law or public policy); *see also Crowell v. Hous. Auth. of City of Dallas*, 495 S.W.2d 887, 889 (Tex. 1973) (invalidating a lease clause on public policy grounds because it purported to release the Dallas Housing Authority from liability for negligence in the performance of its duty of public service); *Goodstein v. Huffman*, 222 S.W.2d 259, 260 (Tex. App.—Dallas 1949, writ ref'd) (acknowledging the

right of parties to contract regarding property, provided the contract does not contravene public policy and is not illegal); *In re Kasschau*, 11 S.W.3d 305, 312 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) (holding that "a contract to do a thing which cannot be performed without violation of the law" violates public policy and is void). The right to create and provide terms governing the leasing of public lands is a power over public policy provided to the Legislature. *Fitzgerald*, 9 S.W. 150 (Tex. 1888).

To the extent the Fair Park Contract is construed to provide a basis for SFOT's exclusion of license holders carrying handguns in Fair Park, the City has implicitly acted to exclude license holders from public property. The Fair Park Contract contains a provision stating that it was made subject to all applicable state laws and would be governed by and construed according to the laws of Texas. C.R. 535 at 18.01. However, the City has never attempted to clarify with SFOT that the Fair Park Contract does not allow it to institute its ban at issue. Instead, the City maintains that its lessee acts completely within the terms of the Fair Park Contract. C.R. 103 ("SFOT runs the Fair at Fair Park pursuant to a written lease and contract agreement."). Subsection 411.209(a)'s broad

liability for the City can be triggered by *any* action taken by the City that states or implies that license holders carrying handguns may be excluded from City property where not otherwise required by law.

The City's lease is the explicit or implicit authorization and antecedent to SFOT's exclusion of license holders carrying handguns in Fair Park, where license holders are plainly afforded the right to carry and enter under subsection (a). Without the Fair Park Contract, through which the City *acted* to convey some of its rights in Fair Park, SFOT could not effectuate its ban, and license-holding Texans would be free to lawfully carry their handguns in Fair Park. Therefore, the City has acted to exclude license holders carrying handguns in Fair Park in contravention of section 411.209, effectively circumventing the public policy established by the Legislature in that statute.

The City, further, has continued to act by maintaining its lease agreement with SFOT even after the State notified the City that license holders carrying handguns were being excluded from Fair Park in violation of section 411.209. The City acts by allowing the Fair Park Contract, the City's lease agreement with SFOT, to remain in effect notwithstanding the continued practice through to the 2025 State Fair of

excluding license holders carrying handguns. Allowing the lease agreement with SFOT to continue in the face of blatant, express exclusion in SFOT's website, at the very least, is an act by the City that implies licensed Texans are banned from Fair Park. And the City's insistence that its lessee acts completely within the terms of the Fair Park Contract is a further act that implies licensed Texans with handguns are excluded from City-owned Fair Park. C.R. 103 ("SFOT runs the Fair at Fair Park pursuant to a written lease and contract agreement.").

> ### v. The trial court abused its discretion in excluding competent summary judgment evidence.

That the City has acted in implicitly ratifying SFOT's construction of the Fair Park Contract is clear when considering the City's previous conduct concerning SFOT's other problematic policies. This case is not the first time the State has been involved in litigation regarding firearms policies covering Fair Park. Attached to the Plaintiff's Motion was competent summary judgment evidence concerning the State's previous litigation involving SFOT's systematic exclusion of armed off-duty peace officers from the premises of Fair Park in violation of Texas Law. C.R.

454-460, 466-468, 480. Relevant to this case was the City's then-response in the form of correspondence with the Attorney General. C.R. 440. The City objected on relevance grounds to this evidence both at the hearing as well in the City Defendants' Objections and Motion to Strike Plaintiffs' Summary Judgment Evidence, objections to which SFOT joined. R.R. 36:11-14, 37:4-10; C.R. 813-815. The trial court sustained the Defendants' various objections to this evidence.[9] For the reasons discussed below, the City's 2023 correspondence was admissible evidence relevant to demonstrating the City's actual ability to influence SFOT, and the trial court abused its discretion by excluding the evidence.

### 1. The evidence at issue is relevant.

Prior to the instant litigation, the Attorney General had received a written complaint from a Texas peace officer that on October 8, 2022, he had been prohibited or restricted from carrying a weapon while off duty into the 2022 State Fair event held at Fair Park, contrary to Tex. Code

---

[9] The trial court previously sustained objections made to the evidence at issue during the temporary injunction phase of the litigation. C.R. 814, 938. The City globally renewed its objections in the City Defendants' Objections and Motion to Strike Plaintiffs' Summary Judgment Evidence. C.R. 813-815. It is not apparent from the face of the record that the trial court signed an order granting the City Defendants' Objections and Motion to Strike. However, the trial court did sustain SFOT's evidentiary objections and did extend any ruling it made on the City's objections equally to SFOT. C.R. 938. Thus, it is apparent from the face of the record that the trial court sustained the Defendants' various objections to the evidence at issue. *See* Tex. R. App. P. 33.1(a)(2)(A).

Crim. Proc. art. 2.1305 (which, effective Jan. 1, 2025, is now known as Tex. Code Crim. Proc. art. 2A.052). The Attorney General sent a letter to the City of Dallas on February 8, 2023, seeking cooperation and compliance with Texas laws concerning a peace officer's authority to carry a weapon in an establishment serving the public or place to which the general public is regularly, normally, or customarily invited. C.R. 437-438; see also C.R. 434-435. The City of Dallas then provided a copy of such letter to its lessee the State Fair of Texas. C.R. 442-443. On February 21, 2023, the City of Dallas sent a responsive letter to the Attorney General and also provided the Attorney General with a letter from SFOT. C.R. 440. The City of Dallas expressed its commitment to comply with Texas laws concerning a peace officer's authority to carry a weapon into Fair Park, and because the State Fair of Texas operated the state fair event, the City of Dallas had also secured from SFOT, its tenant, a letter making the same commitment to comply with Texas law. C.R. 440, 442-443.

The City's correspondence is evidence relevant to demonstrating the actual control the City exercises over SFOT when it is not instead exercising tactical indifference to its lessee's action under the Fair Park

Contract. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Tex. R. Evid. 401. The central issue of this litigation is whether the City has taken any action that states or implies that a license holder carrying a handgun may not enter or remain on the premises of Fair Park. Throughout the course of this litigation, the City has maintained that it has not taken any action, and further that it cannot influence or restrain SFOT regarding its policy. C.R. 750. However, the fact that the City has previously exercised its influence to restrain SFOT's actions taken under the aegis of the Fair Park Contract makes it far more probable that the City has instead acted through its implicit ratification of SFOT's construction of the Fair Park Contract. Evidence of the City's previous conduct regarding its lessee illuminates the City's conspicuous choice in this case to allow SFOT to continue its exclusionary policy, which goes to the City's ultimate liability under section 411.209.

## 2. The trial court abused its discretion.

Although courts review the rendition of summary judgments de novo, courts review a trial court's decision to exclude summary judgment

evidence for an abuse of discretion. *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017). A trial court abuses its discretion if its ruling is arbitrary or unreasonable or without reference to any guiding rules and principles. *Cire v. Cummings*, 134 S.W.3d 835, 838–39 (Tex. 2004). To warrant reversal, the appellant must show that the trial court's erroneous admission or exclusion of evidence was harmful—that it was calculated to cause and probably did cause the rendition of an improper judgment. Tex. R. App. P. 44.1; *Owens–Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

When considering the excluded evidence at issue, the City's 2023 response concerning SFOT, the trial court abused its discretion in sustaining the various objections to it. The evidence goes directly to the City's implicit ratification of SFOT's construction of the Fair Park Contract and the City's deliberate allowance of SFOT's exclusionary policy. As the evidence at issue is relevant to establishing the City's ultimate liability under section 411.209 and serves to disprove the City's contention that it lacked any ability to influence its lessee, the trial court's exclusion of the evidence was harmful and probably did cause the rendition of an improper judgment. Thus, this Court should reverse the

trial court's order and consider the fact of the City's previous actions of influencing SFOT to comply with state gun laws in light of the City's current position that it cannot do so.

### vi. The Court should not rely on the Attorney General's previous opinion, KP-0108.

To the extent the trial court relied on a now-withdrawn opinion of the Attorney General, KP-0108, such reliance was reversible error, and this Court should not rely on KP-0108. During the summary judgment proceedings, the City advocated a construction of section 411.209 premised entirely on the logic advanced in KP-0108, which posited "[a]s long as the state agency or political subdivision leasing the property to the nonprofit entity has no control over the decision to post such notice, the state agency or political subdivision lessor would not be the entity responsible for the posting and would therefore not be subject to a civil penalty under section 411.209." Tex. Att'y Gen. Op. No. KP-0108, (2016) at *1.

While Attorney General's opinions can be persuasive, they are not binding on the courts. *Weaver v. Head*, 984 S.W.2d 744, 746 (Tex. App.— Texarkana 1999, no pet.) (citing *Ex parte Schroeter*, 958 S.W.2d 811, 813

(Tex.Crim.App.1997); *Tussey v. State*, 494 S.W.2d 866, 870 n. 3 (Tex. Crim. App. 1973)). KP-0108 was withdrawn as an official opinion of the Office of the Attorney General following two members of the Texas Legislature asking the Attorney General to consider the issues underlying this case. C.R. 783-784. The Attorney General's decision to withdraw was based on the previously unforeseen developments and the specific factual circumstances of the 2024 State Fair along with SFOT's inappropriate reliance on the outdated statement of law contained within KP-0108. C.R. 129, 516, 783-784. The Attorney General's withdrawal of KP-018 was well founded. Specifically, KP-0108, issued in 2016, assessed section 411.209 before the Legislature substantially amended it in 2019, going as far as to forbid "any action" that "states or implies" exclusion and going as far as to subject violators to daily civil penalties, mandamus, and other equitable relief. Act of May 21, 2019, 86th Leg., R.S., ch. 784, § 1, sec. 411.209, 2019 Tex. Gen. Laws 2229, 2229–30 (amending Government Code section 411.209). Prudently, the OAG withdrew KP-0108, which prevented further confusion while OAG and the judiciary conducted analyses of the law and any applicable changes to the law and statutory scheme.

To the extent the City continues to rely on the logic of KP-0108, when, considering the actual text of section 411.209, it is clear that the *arms-length* qualification that KP-0108 reads into that section is extratextual, such logic should be rejected by this Court. The *text* of section 411.209 does not qualify its application to merely "premises . . . owned . . . by the governmental entity" only so long as the governmental entity does not lease the premises to a private entity. Tex. Gov't Code § 411.209(a) (cleaned up). Statutory interpretation must follow the plain, contemporaneous meaning of the law's language. *Bexar Appraisal Dist. v. Johnson*, 691 S.W.3d 844, 847 (Tex. 2024). As discussed above, section 411.209 applies to *all* premises owned by the governmental entity. Thus, to the extent the Court might interpret section 411.209 based on KP-0108, which has been withdrawn, the Court should focus on the plain language within section 411.209. For these reasons, the Court should reject KP-0108's logic and extratextual construction of section 411.209.

### vii. The State is entitled to summary judgment against the City.

As it has been shown that the City has "acted" within the meaning of Texas Government Code section 411.209 to exclude license holders lawfully carrying handguns from public property, the State is entitled to

summary judgment against the City. The Court should reverse the orders of the trial court and render summary judgment for the State on the issue of whether the City violated section 411.209.

## CONCLUSION

As it has been shown above that the trial court had subject matter jurisdiction, the State pled a waiver of the City's sovereign immunity, and the State is entitled to summary judgment against the City, this Court should reverse the orders of the trial court and render summary judgment for the State. As there are no meritorious theories that were presented to the trial court upon which it could base its orders, this Court should reverse those orders. *See Hansen*, 525 S.W.3d at 680 (When the trial court's order does not specify the grounds for its summary judgment, courts must affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious.).

Furthermore, it has been shown that the State is entitled to summary judgment against the City on its claim under Texas Government Code section 411.209, to the mutual exclusion of the City's and SFOT's respective motions. *See City of Richardson*, 539 S.W.3d at

259 ("On cross-motions for summary judgment, each party bears the burden of establishing that it is entitled to judgment as a matter of law."). Therefore, this Court should reverse the orders of the trial court and render summary judgment for the State against the City. Furthermore, the Court should issue a permanent injunction restraining the Defendants from further violating the statutory rights of license holders through their exclusionary practices.

## PRAYER

For the foregoing reasons, appellant the State of Texas respectfully requests that the Court reverse the judgment below and render judgment here for the State of Texas.

Date: October 23, 2025

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

AUSTIN KINGHORN
Deputy Attorney General for Civil
Litigation

ERNEST C. GARCIA
Chief, Administrative Law Division

*/s/ Canon Hill*
CANON PARKER HILL
State Bar Number: 24140247
Assistant Attorney General
ERNEST C. GARCIA
State Bar No. 07632400
Assistant Attorney General
ALEXANDER COMSUDI
State Bar No. 24087006
Assistant Attorney General
Administrative Law Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711
Telephone: (512) 936-1838
Facsimile: (512) 320-0167
canon.hill@oag.texas.gov
ernest.garcia@oag.texas.gov
alexander.comsudi@oag.texas.gov

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Texas Rule of Appellate Procedure 9.4(i)(3), and the word count of this document is 10,944 words including all portions that are not exempted by the rule. The word processing software used to prepare this filing and calculate the word count of the document is Microsoft Word.

*/s/Canon Hill*
CANON PARKER HILL
Assistant Attorney General

# CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2025, a true and correct copy of the above and forgoing document has been served to the following party of record via electronic service and/or electronic mail:


Jeffrey Tillotson          via e-service to:  jtillotson@tillotsonlaw.com
Tillotson, Johnson & Patton
1201 Main Street, Suite 1300
Dallas, Texas 75202
***Counsel for City of Dallas and***
***Kimberly Tolbert***


Jim Harris          via e-service to:  jim.harris@hklaw.com
Holland & Knight
One Arts Plaza
1722 Routh Street, Suite 1500
Dallas, Texas 75201-2532
***Counsel for State Fair of Texas***


Tony K. McDonald          via e-service to:    Tony@tonymcdonald.com
State Bar No. 24083477
Connor Ellington          via e-service to:    connor@tonymcdonald.com
State Bar No. 24128592
The Law Offices of Tony McDonald
1308 Ranchers Legacy Trail
Fort Worth, TX 76126
***Counsel for Individual Plaintiffs***


*/s/ Canon Hill*
CANON PARKER HILL
Assistant Attorney General

# APPENDIX

Appendix 1                                         SFOT Webpage

# APPENDIX 1



| | |
|---|---|
| Document title: | FAQs \| State Fair of Texas |
| Capture URL: | https://bigtex.com/about-us/faq/ |
| Page loaded at (UTC): | Mon, 29 Sep 2025 13:29:57 GMT |
| Capture timestamp (UTC): | Mon, 29 Sep 2025 13:32:45 GMT |
| Capture tool: | 10.61.0 |
| Collection server IP: | 54.145.42.72 |
| Browser engine: | Mozilla/5.0 (X11; Linux x86_64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/138.0.7204.97 Safari/537.36 |
| Operating system: | Linux (Node 22.17.0) |
| PDF length: | 8 |
| Capture ID: | eVgmziMHHGT7GDvP91EBfc |
| Display Name: | pat.slager |

PDF REFERENCE #:     dhBW5NJezAX2GytwgTPXNx

**State Fair OF TEXAS**

TICKET OPTIONS      PLAN YOUR VISIT      EVERY DAY VALUES      SHOP      GET INVOLVED      SUPPORTING TEXANS      ABOUT US

**BUY TICKETS**

HOME  ›  ABOUT US  ›  FAQS

# FAQS



## WHAT ARE YOU LOOKING FOR?

| Search by keywords or phrases |      🔍 SEARCH

## QUICK LINKS:



**KNOW BEFORE YOU GO**



**INSIDE THE FAIR GROUNDS**



**AMENITIES & ACCESSIBILITY**



**SPORTS AT THE FAIR**



**WORK WITH THE FAIR**

 **KNOW BEFORE YOU GO**

**What are the Fair's hours?**                                               ⌄



TICKET OPTIONS    PLAN YOUR VISIT    EVERY DAY VALUES    SHOP    GET INVOLVED    SUPPORTING TEXANS    ABOUT US

**BUY TICKETS**

**Where can I park and how much is it?** ⌄

**Where can I stay nearby?** ⌄

**What are coupons? How much is a coupon worth?** ⌄

**Can I use coupons that I bought at last year's fair?** ⌄

**What food and drinks can I buy at the fair?** ⌄

**What should I wear to the fair?** ⌄

**How do I pay for food, drinks, rides, and games?** ⌄

**Can I use cash/credit card to buy food, ride a ride, or play a game?** ⌄

**Can I return or exchange my unused coupons for money?** ⌄

**What activities are free at the fair?** ⌄

**How much do rides and games cost?** ⌄

**Can I bring my pet to the fair?** ⌄

**Can I bring bull horns, air horns, megaphones, or similar items into the fair?** ⌄

**Can I bring large signs, large props, or similar items into the fair?** ⌄

**Can I bring selfie sticks, tripods, monopods, or other camera equipment into the fair?** ⌄

**Can I fly drones/UAVS/UASS at the fair?** ⌄

**Can I ride a bicycle, skateboard or roller blade at the fair?** ⌄

**Can I bring a wagon into the fair?** ⌄

**Can I bring personal food and beverages, coolers, or ice chests into the fair?** ⌄

**When visiting the State Fair of Texas, what rules should I expect to follow?** ⌄

**After 5 p.m. Minors Policy** ⌄

⌃ TOP



TICKET OPTIONS     PLAN YOUR VISIT     EVERY DAY VALUES     SHOP     GET INVOLVED     SUPPORTING TEXANS     ABOUT US

**BUY TICKETS**

### Does the fair take photos or video of its guests for various purposes?     ˅

### Can I bring any weapons into the fair?     ˅

The State Fair of Texas prohibits fairgoers from carrying all firearms, knives (other than small pocket knives), clubs, explosive devices, ammunition, chemical dispensing devices, replicas or hoaxes, or weapons of any kind. This includes concealed carry and open carry of firearms anywhere on the fairgrounds including Cotton Bowl Stadium. This policy does not include elected, appointed, or employed peace officers.

**How will the State Fair enforce this policy?**
The State Fair is working diligently with its security partners to plan for the implementation of this policy.
Security team members will receive ample training to enforce this new policy. In addition, the State Fair has made significant financial investments in the security technology OPENGATE ® – a Weapons Detection System designed for screening people as well as their bags. OPENGATE is one piece of the overall security screening process at every entry gate.

**Why did the Fair change its weapons policy?**
Every year, the State Fair of Texas has an ongoing safety and security assessment, adding and adjusting security measures to ensure a safe environment for all fairgoers, employees, and vendors. For us to continue offering a safe event for all, we feel this is an important measure to implement.
Other events like the Houston Livestock Show and Rodeo, San Antonio Stock Show and Rodeo, and Rodeo Austin follow similar weapons policies as well.

### Can someone with a license to carry (LTC) bring their firearm to the fair?     ˅

No.

### Can a licensed peace officer bring their firearm to the fair?     ˅

### Aside from firearms, and knives (other than small pocket knives), what weapons are not allowed into the fair?     ˅

Other prohibited items include firearms and/or ammunition; air guns, BB guns, pellet guns, paintball guns, slingshots; firearm replicas, including non-firing imitations, toys, and their components. Other weapons of any kind. Any items deemed inappropriate or hazardous by the State Fair of Texas.

### Is there a bag policy for fairgoers?     ˅

### What bags are prohibited for fairgoers?     ˅

### Can fairgoers bring a medical bag?     ˅

### Can fairgoers bring a parenting/childcare/diaper bag?     ˅

### Will there be lockers to store items if someone brings a prohibited bag or item?     ˅

### What items are prohibited at the fair?     ˅

### What activities are prohibited at the fair?



State Fair OF TEXAS®

TICKET OPTIONS    PLAN YOUR VISIT    EVERY DAY VALUES    SHOP    GET INVOLVED    SUPPORTING TEXANS    ABOUT US

**BUY TICKETS**

How can I stay safe if I can't use my license to carry (LTC)?    ▼

How will the State Fair enforce this new policy?    ▼

What about bags for the games in the Cotton Bowl?    ▼

How do I get there?    ▼

## 🎈 INSIDE THE FAIR GROUNDS

What rides and games are available at the Fair?    ▼

Is there live music at the Fair?    ▼

Where can I get information once I'm inside the fairgrounds?    ▼

Where is Guest Relations located on the fairgrounds?    ▼

What if my child gets lost or separated from me? What is the Safe Kids Program?    ▼

Do you have a Lost and Found?    ▼

Are the Children's Aquarium and Texas Discovery Gardens open during the Fair?    ▼

Why are similar items different prices throughout the Fairgrounds?    ▼

Where can I find First Aid?    ▼

Where can I find family restrooms or restrooms with accessible features?    ▼


TOP

## ⬡ AMENITIES & ACCESSIBILITY



TICKET OPTIONS      PLAN YOUR VISIT      EVERY DAY VALUES      SHOP      GET INVOLVED      SUPPORTING TEXANS      ABOUT US

**BUY TICKETS**

Baby Care Centers                                              ⌄

ATM Machines                                                  ⌄

ASL Interpretation                                           ⌄

Wagons, Strollers, Wheelchairs and Mobility Scooters          ⌄

Sensory-Friendly Mornings                                    ⌄

Ride Sharing and Taxi Services                               ⌄

🏈 **SPORTS AT THE FAIR**

What games are played at the Cotton Bowl during the Fair?      ⌄

Is the Allstate Red River Rivalry (Texas/OU) at the Fair every year?    ⌄

Is the State Fair Classic (Grambling/Prairie View) at the Fair every year?    ⌄

What is the State Fair Showdown?                              ⌄

What items are not allowed inside Cotton Bowl Stadium?        ⌄

Are food and drinks available for purchase inside Cotton Bowl Stadium?    ⌄

Will game ticket get me into the Fair?                       ⌄

FAN CODE OF CONDUCT FOR COTTON BOWL STADIUM                  ⌄

What is the State Fair Clásico?                              ⌄

⌃ TOP



TICKET OPTIONS    PLAN YOUR VISIT    EVERY DAY VALUES    SHOP    GET INVOLVED    SUPPORTING TEXANS    ABOUT US

**BUY TICKETS**

## 🤝 WORK WITH THE FAIR

Interested in seasonal employment?                                              ⌄

Interested in exhibiting livestock?                                             ⌄

Interested in being a commercial exhibitor?                                     ⌄

Interested in being a vendor?                                                   ⌄

Interested in being a sponsor?                                                  ⌄

Interested in volunteering?                                                     ⌄

### BECOME A
### BIG TEX INSIDER

and get early access to event info, ticket discounts, exclusive Big Tex store promos, and more!

**NAME**

First                          Last

Email

**DATE OF BIRTH**

Month ⌄     Day ⌄     Year ⌄

**CAPTCHA**

☐ I'm not a robot   reCAPTCHA
Privacy - Terms

**SUBMIT**

### MISSION STATEMENT

The State Fair of Texas celebrates all things Texan by promoting agriculture, education, and community involvement through quality entertainment in a family-friendly environment.

### CONTACT

**FAIRTIME PARKING ADDRESS**
925 S. Haskell
Dallas, Texas 75223

### SOCIAL

f  🐦  📷  ▶

⌃ TOP



STATE FAIR OF TEXAS.

TICKET OPTIONS    PLAN YOUR VISIT    EVERY DAY VALUES    SHOP    GET INVOLVED    SUPPORTING TEXANS    ABOUT US

BUY TICKETS

Interested in being a sponsor?                                            ⌄

Interested in volunteering?                                               ⌄

## BECOME A
## BIG TEX INSIDER

and get early access to event info, ticket discounts, exclusive Big Tex store promos, and more!

**NAME**

First                          Last

Email

**DATE OF BIRTH**

Month ⌄          Day ⌄          Year ⌄

**CAPTCHA**

☐ I'm not a robot
reCAPTCHA
Privacy - Terms

SUBMIT

## MISSION STATEMENT

The State Fair of Texas celebrates all things Texan by promoting agriculture, education, and community involvement through quality entertainment in a family-friendly environment.

The State Fair of Texas is a 501(c)(3) nonprofit organization.

## CONTACT

**FAIRTIME PARKING ADDRESS**
925 S. Haskell
Dallas, Texas 75223

**TELEPHONE**
469-945-FAIR

## SOCIAL

© 2025 State Fair of Texas. The most Texan place on Earth. Information contained in this website is the property of the State Fair of Texas, all rights reserved. Privacy Policy

TOP

Document title: FAQs | State Fair of Texas
Capture URL: https://bigtex.com/about-us/faq/
Capture timestamp (UTC): Mon, 29 Sep 2025 13:32:45 GMT

Page 7 of 7

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Paul Pruneda on behalf of Canon Hill
Bar No. 24140247
paul.pruneda@oag.texas.gov
Envelope ID: 107237868
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: 2025 10 23 States Brief on the Merits
Status as of 10/24/2025 7:07 AM CST

Associated Case Party: City of Dallas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Joseph AIrrobali | | airrobali@tillotsonlaw.com | 10/23/2025 7:28:17 PM | SENT |
| Nathaniel Buchheit | | nbuchheit@tillotsonlaw.com | 10/23/2025 7:28:17 PM | SENT |
| Megan Coker | | mcoker@tillotsonlaw.com | 10/23/2025 7:28:17 PM | SENT |
| Anne Johnson | | ajohnson@tillotsonlaw.com | 10/23/2025 7:28:17 PM | SENT |
| Jeffrey Tillotson | 20039200 | jtillotson@tillotsonlaw.com | 10/23/2025 7:28:17 PM | SENT |

Associated Case Party: State Fair of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Bryan Neal | 788106 | Bryan.Neal@hklaw.com | 10/23/2025 7:28:17 PM | SENT |
| James Harris | 9065400 | jim.harris@hklaw.com | 10/23/2025 7:28:17 PM | SENT |
| Sherri Rodgers | | sherri.rodgers@hklaw.com | 10/23/2025 7:28:17 PM | SENT |
| Robert  B.Smith | | Robert@Smith-Firm.com | 10/23/2025 7:28:17 PM | SENT |

Associated Case Party: State of Texas

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Melissa Juarez | | melissa.juarez@oag.texas.gov | 10/23/2025 7:28:17 PM | SENT |
| Ernest Garcia | | ernest.garcia@oag.texas.gov | 10/23/2025 7:28:17 PM | SENT |
| Catherine Hughes | | catherine.hughes@oag.texas.gov | 10/23/2025 7:28:17 PM | SENT |
| Paul Pruneda | | paul.pruneda@oag.texas.gov | 10/23/2025 7:28:17 PM | SENT |
| Meridith Fischer | | Meridith.Fischer@oag.texas.gov | 10/23/2025 7:28:17 PM | SENT |
| Steven Ogle | | Steven.Ogle@oag.texas.gov | 10/23/2025 7:28:17 PM | SENT |

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Paul Pruneda on behalf of Canon Hill
Bar No. 24140247
paul.pruneda@oag.texas.gov
Envelope ID: 107237868
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: 2025 10 23 States Brief on the Merits
Status as of 10/24/2025 7:07 AM CST

Associated Case Party: State of Texas

| | | | | |
|---|---|---|---|---|
| Steven Ogle | | Steven.Ogle@oag.texas.gov | 10/23/2025 7:28:17 PM | SENT |
| Holly Dudrick | | holly.dudrick@oag.texas.gov | 10/23/2025 7:28:17 PM | SENT |
| Canon ParkerHill | | canon.hill@oag.texas.gov | 10/23/2025 7:28:17 PM | SENT |

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Kira Lytle | | klytle@tillotsonlaw.com | 10/23/2025 7:28:17 PM | SENT |
| TJP Service | | tillotsonjohnsonpatton@gmail.com | 10/23/2025 7:28:17 PM | SENT |
| William Cole | | William.Cole@oag.texas.gov | 10/23/2025 7:28:17 PM | SENT |
| William Peterson | | William.Peterson@oag.texas.gov | 10/23/2025 7:28:17 PM | SENT |
| Bryan Neal | | bryan.neal@hklaw.com | 10/23/2025 7:28:17 PM | SENT |
| Tony McDonald | | Tony@tonymcdonald.com | 10/23/2025 7:28:17 PM | SENT |
| Devlin Browne | | dbrowne@tillotsonlaw.com | 10/23/2025 7:28:17 PM | SENT |

Associated Case Party: AlanCrider

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Connor Ellington | | connor@tonymcdonald.com | 10/23/2025 7:28:17 PM | SENT |

Associated Case Party: MaxxJuusola

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Connor Ellington | | connor@tonymcdonald.com | 10/23/2025 7:28:17 PM | SENT |

Associated Case Party: TracyMartin

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Paul Pruneda on behalf of Canon Hill
Bar No. 24140247
paul.pruneda@oag.texas.gov
Envelope ID: 107237868
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: 2025 10 23 States Brief on the Merits
Status as of 10/24/2025 7:07 AM CST

Associated Case Party: TracyMartin

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Connor Ellington | | connor@tonymcdonald.com | 10/23/2025 7:28:17 PM | SENT |